*385 Scileppi, J. (dissenting).
While we recognize the interest which appellant may personally have in this proceeding, since the granting of respondent’s application will bring about additional business competition, we should and do consider the broader and more important question of the impact and adverse effect which the granting of this license would undoubtedly have on the particular community in which the license is sought.
After investigating the respondent’s application for a package liquor store license at premises designated as 746 Evergreen Avenue, in the Bushwick section of Brooklyn, the New York City Alcoholic Beverage Control Board recommended to the State Liquor Authority that the application be disapproved. The reasons given were that the premises were in too close proximity to two elementary schools; a sufficient number of licensed premises were already operating in this “ sensitive ” area; and, under all the circumstances, public convenience and advantage would not be served by the approval of this application.
Contrary to this recommendation, the Authority approved the application, finding that the public convenience and advantage would be served by the approval of this package store license at this location.
In Matter of Forman v. New York State Liq. Auth. (17 N Y 2d 224) Chief Judge Desmond discussed the meaning of “ public convenience ” and “ public advantage ”: “ ‘ Public convenience ’ necessarily refers to the accessibility of stores and involves considerations of distance, overcrowding of present facilities, etc. ‘ Public advantage ’ is a broader term which brings into play social and similar problems, and involves the State’s general policy as to the sale of alcoholic beverages for off-premises consumption. That general public policy, as stated in section 2 of the Alcoholic Beverage Control Law, is to regulate the manufacture and distribution of alcoholic beverages for the purpose of fostering and promoting temperance and respect for and obedience to law. The record on this appeal leaves it a mystery as to how either ‘ public convenience ’ or ‘ public advantage ’ can in any conceivable way or according to any possible way of thinking be promoted by licensing a fifth package store in this small neighborhood ” (p. 230; emphasis added).
*386 While it is clear that the competitive aspect of the liquor industry is a legitimate concern of the Authority in determining whether public convenience and advantage will be promoted by the issuance of a license, it is equally clear that the Authority must concern itself with needs and problems of the local community and the effect that additional liquor stores will have upon it.
The majority finds that the Authority has complied with the requirement of the Forman case in that it shows a rational basis for its conclusion as to public advantage and convenience. We cannot agree with this finding.
The record in this case overwhelmingly supports the conclusion reached by the local board that public convenience and advantage would not be served by the addition of another package liquor store in the Bushwick section.
The investigation by the local board disclosed the unfortunate conditions existing in the area of the proposed liquor store. The Bushwick community has been declared a poverty stricken area by the New York City administration. It suffers an unemployment rate which is more than double the national average, and it is the subject of an extensive rehabilitation study and effort made by both Federal and City Governments. Photographs submitted to the Authority and to us on this appeal show the physical deterioration and decay of the neighborhood.
The Bushwick Community Association, as well as many other civic groups, strongly protested approval of the respondent’s application.
A survey of conditions existing in the area made by the Bushwick Community Association called the attention of the Authority and of the local board to the following facts:
that statistics of the New York City Youth Board showed that the juvenile delinquency rate in the health area in which the subject premises are located climbed from 20.4 per thousand youths in 1953 to 99.4 per thousand youths in 1964;
that the juvenile crime rate in the subject area is the worst in the entire city;
that the local area had been the scene of shotgun assaults and knifings as recently as July, 1966;
that the area is a poverty stricken area, suffering physical and moral deterioration;
*387 that crime conditions are so bad in the subject area that Public School No. 45, located by 225 feet from the proposed liquor store, was constructed as if it were a fort, without exterior windows, and with all means of ingress and egress barred or grated;
that the violence which exists in the subject area is largely attributable to the excessive use of drugs and alcohol by certain elements in the community, particularly by young people;
that alcoholic beverages may be conveniently obtained within the area from existing outlets.
We note that the investigation of the local board does not contain a single fact indicating that any portion of the public has been, or is being, inconvenienced by the present location of outlets for the sale of alcoholic beverages for off-premises consumption.
The transcript of the minutes of the statutory hearing held by the Authority shows that there was placed in evidence the application of the respondent Perocier, the local board’s disapproval, the digest sheet and various letters of protest received from community civic groups.
The transcript further shows that only two witnesses testified in the course of the hearing. Respondent Perocier and his accountant were called solely for the purpose of testifying as to the net worth of said respondent. There was absolutely no testimony or evidence presented which shed any contrary light on the physical, social, economic or crime conditions existing in the area.
In support of the Authority’s determination, there is, however, the following conclusory allegation in the affidavit of Donald S. Hostetter, Chairman of the State Liquor Authority: “ The issuance of a package store liquor license at the proposed location will serve a congested, densely populated neighborhood and will enable those in the vicinity to obtain alcoholic beverages without the necessity of walking a number of blocks or crossing heavily travelled, dangerous thoroughfares.”
Rather than providing a rational basis for the Authority’s determination, this statement reinforces our view that the Authority has treated the concept of public convenience and advantage as being limited to the convenience of obtaining more liquor. This the Authority cannot do. As the court at Special Term noted, ‘ ‘ By law [the Authority] is also required to concern *388 itself with needs of the neighborhood and the effect upon it of additional liquor stores It is obvious from a reading of the whole record that the Authority disregarded these factors and, therefore, in our opinion, it abused its discretion.
Moreover, the record is devoid of substantial evidence indicating that another liquor store would result in convenience or advantage to the people of this community. Indeed, the granting of this license can only serve to aggravate the unfortunate conditions which presently exist there.
Accordingly, we would reverse.
Chief Judge Fuld and Judges Bergan and Breitel concur with Judge Burke; Judge Scileppi dissents and votes to reverse in an opinion in which Judges Keating and Jasen concur.
Order affirmed, with costs to respondents Authority and board.